UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| **MERLE T. RUTLEDGE, JR.** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | Case No.: 2:13cv470 |
| : | |
| **OFFICER TESSIER,** : | |
| **And** : | |
| **OFFICER PLAZA,** : | |
| : | |
| **Defendants.** : | |

## MEMORANDUM ORDER

Plaintiff, Merle T. Rutledge, Jr., pro se, sued two Norfolk police officers following an investigatory stop of Rutledge's vehicle in the City of Norfolk. In this claim for damages and declaratory relief under 42 U.S.C. § 1983, Rutledge argues that the officers lacked reasonable suspicion for the stop and as a result violated his rights under the Fourth Amendment to be free from unreasonable seizures. The officers, Joseph A. Plaza ("Plaza") and Laura L. Tessier ("Tessier") (collectively, "Defendants"), deny they violated Rutledge's rights in performing the stop which they initiated following a report that the vehicle Rutledge was driving had been stored and/or abandoned. The matter was previously before the Court on Rutledge's Motion for Partial Summary Judgment (ECF No. 26) as to liability. The Court denied Rutledge's motion, noting that both officers submitted sworn statements disputing Rutledge's claims regarding the reasons for the stop. (ECF No. 36).

Relying on similar sworn statements, the officers have now moved for summary judgment in their favor. (ECF No. 40). After considering their sworn statements, Rutledge's

1

sworn opposition, and reviewing the videotaped evidence of the stop, the Court finds no material fact in dispute and GRANTS the officers' Motion for Summary Judgment.

## I. SUMMARY OF UNDISPUTED MATERIAL FACTS

Rutledge and his passenger, Vernon Evans-El were stopped by Tessier and Plaza on January 6, 2013. According to Officer Plaza's affidavit, the stop resulted from an inquiry he made to the Virginia Criminal Information Network ("VCIN"). (Plaza Dec. ECF No. 41-2 at ¶ 5. Plaza attests that he noticed Rutledge's vehicle as a result of a peeling registration sticker on the license plate. Id. at ¶ 4 The peeling sticker caused Plaza to check VCIN for information on the vehicle's license plate number. Id. The VCIN check returned a "hit" stating that the vehicle was stored or impounded as a result of being abandoned. Based on the fact that VCIN reported the vehicle to be stored following abandonment, Plaza and Tessier initiated a traffic stop to investigate. Id. at ¶ 5.

On stopping the vehicle, Rutledge explained that it was owned by his mother and that they had paid the towing fee and other charges and retrieved the vehicle from Norfolk's impound lot. Plaza confirmed that the vehicle was titled in the name of Rutledge's mother and undertook to investigate and correct the VCIN error that had resulted in the stop. Id. at ¶¶ 7-11. The entire stop, including the period of time necessary to clear the erroneous VCIN entry, took approximately 20 minutes. (See id., Ex. B, Videotape of In-car recording at 17:05:20 – 17:25:18). At the conclusion of his investigation, Plaza advised Rutledge that he was free to go. (Id. at ¶¶ 13-16, Ex. B, Videotape at 17:25:18). Throughout the encounter Rutledge and his passenger had requested to speak to a supervisor, and as a result, a third officer, Sargent J. D. Pucket arrived and spoke with Rutledge for some time after the stop at Rutledge's request. (Plaza Dec. at ¶ 14; Tessier Dec., ECF No. 41-1 at ¶ 9).

Rutledge's Opposition to Summary Judgment depends almost entirely on his claim that Officers Plaza and Tessier lacked reasonable suspicion for the stop. His sworn opposition includes only a lengthy argument purporting to explain that his vehicle should not have been reported as stored or abandoned on the VCIN data base. (e.g. ECF No. 44 at 2-4). He also believes the stop resulted solely from the peeled registration sticker, which he claims Rutledge described to him on approaching his vehicle. (Complaint, ECF No. 18 at 1). Because Rutledge argues a peeling registration sticker is an insufficient basis to support the investigatory stop, he asks the Court to deny the officers' motion. (ECF No. 44 at 6). In addition, although Rutledge agrees that Officer Plaza advised him he was free to go, he claims that Plaza's partner, Officer Tessier, never advised him he could leave. For her part, Officer Tessier states, without dispute, that her separate inquiry related to the identity of the vehicle passenger, Evans-El, was completed before Officer Plaza resolved the erroneous VCIN record.[1] (Tessier Dec., ECF No. 41-1 at ¶ 6). While Officer Tessier did not specifically reiterate her partner's clear statement that Rutledge was free to go, she can be heard on the videotape telling both occupants to "Have a great night" just before Officer Plaza responded, "yes" to Rutledge's question "Are we free to go?" (Plaza Dec., Ex. B, Videotape at 17:25:10).

## II. ANALYSIS

Federal Rule of Civil Procedure 56 requires the Court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is

---

[1] Evans-El has filed his own claim in this Court related to the same allegedly unconstitutional stop. Evans-El v. Officer Tessier, et al., 2:14cv308.

such that a reasonable jury could return a verdict for the non-moving party." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The party seeking summary judgment has the initial burden of informing the Court of the basis of its motion and identifying materials in the record it believes demonstrates the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 322-25. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see Anderson, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

Section 1983 "imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges or immunities secured by the Constitution and laws.'" Blessing v. Freestone, 520 U.S. 329, 340 (1997) (quoting 42 U.S.C. § 1983). In order to obtain relief under § 1983, the plaintiff must assert the violation of a federal right, not merely some violation of law. Id. Here, Rutledge argues that Officers Plaza and Tessier deprived him of his Fourth Amendment right to be free from unreasonable searches and seizures.

Temporary detention of an automobile constitutes a "seizure" no matter how brief the duration or how limited the purpose. United States v. Branch, 537 F.3d 328, 335 (4th Cir. 2008). Thus, the officers' stop of Rutledge's vehicle must satisfy the Fourth Amendment's mandate that it be reasonable under the circumstances. Whren v. United States, 517 U.S. 806, 810 (1996). An officer who stops and detains a person for investigative questioning . . . "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, 392 U.S. 1, 21 (1968). While such a detention does not require probable cause, it does require something more than an "inchoate and unparticularized suspicion or 'hunch.'" United States v. Sprinkle, 106 F.3d 613, 617 (4th Cir. 1997) (quoting Terry, 392 U.S. at 27). Whether an officer possessed the requisite reasonable suspicion is determined by looking at the totality of the circumstances, and substantial deference is accorded to the experience and training of the officer involved. United States v. Perkins, 363 F.3d 317, 321 (4th Cir. 2004) (citations omitted). The court must "take a commonsense and contextual approach to evaluating the legality of a Terry stop." Branch, 537 F.3d at 336. Reasonable suspicion is a "nontechnical conception[ ] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Ornelas v. United States, 517 U.S. 690, 695 (1996). It is a fluid concept that takes its substantive content from the particular context in which the standard is being assessed. Illinois v. Gates, 462 U.S. 213, 232 (1983).

Although Rutledge claims the officers lacked reasonable suspicion to stop his vehicle, he has failed to present any evidence to dispute the officers' description of the basis for the stop. Both Officers Plaza and Tessier testified that the VCIN inquiry upon which the stop was based preceded the traffic stop. (Plaza Dec., ECF No. 41-2 at ¶ 5; Tessier Dec., ECF No. 41-1 at ¶ 3).

In addition, the Defendants submitted a copy of the VCIN "hit" which appeared on the officers' computer screen reflecting the apparently incorrect report that Rutledge's vehicle was impounded as abandoned. (Plaza Dec., Ex. A, ECF No. 41-2, at 4). The officers also produced sworn testimony from a third party corroborating the inquiries they made to clear the incorrect VCIN report, (Clark Dec., ECF No. 41-3, ¶¶ 4-6), and the videotaped recording of the stop confirms Officer Plaza's description of his efforts to investigate and resolve the error. (Plaza Dec., Ex. B, Videotape at 17:22:10). Because Rutledge's vehicle was listed on the VCIN database as impounded or stored, it was reasonable for the officers to stop to investigate. See United States v. Bumpers, 705 F.3d 168, 171 (4th Cir. 2013) ("The touchstone of the Fourth Amendment inquiry is one of simple reasonableness."). The fact that the officers also described to Rutledge a peeling registration sticker on his license plate, or that they initially used this detail as a basis to inquire about the vehicle prior to the stop, does not undermine the relevance of the apparently erroneous VCIN record.

Rutledge also argues the stop was unnecessarily prolonged while Officer Tessier questioned his passenger, Evans-El. (Complaint, ECF No. 18 at 4). But his vague claims are not sufficient to create a material dispute of fact. While he accurately states that Officer Tessier told him he was "not free to go," this occurred early in the stop prior to Officer Plaza receiving confirmation that the VCIN "hit" was in error. (Plaza Dec., Ex. B, Videotape at 17:14:28). Rutledge has introduced nothing to contradict the videotaped evidence and the sworn testimony of Plaza and Tessier that he was free to go, and told that he was free to go, after the VCIN investigation concluded. (Plaza Dec., Ex. B, and ¶ 13; Tessier Dec. at ¶¶ 7-8); See United States v. Mendenhall, 446 U.S. 544, 554 (1980) (A seizure occurs when "a reasonable person would have believed that he was not free to leave.").

6

The video evidence includes an audio recording reflecting exactly when Officer Plaza's investigation of the VCIN error was resolved. See (Plaza Dec., Ex. B). The stop begins at approximately 17:06:000. Eight minutes later, at approximately 17:14:28, Officer Tessier is heard telling the occupants that they are not free to go because they are still investigating the circumstances of the stop. She can be heard in the background explaining that the stop would need to continue until they learned why the vehicle was still being reported as impounded, despite Rutledge's claim that his mother had retrieved it. Officer Plaza initiates a telephone call to investigate the error at approximately 17:18:55. He explains the circumstances, is placed on hold, but eventually confirms that Rutledge's mother had retrieved the vehicle on November 14, 2012. This information is first conveyed to Plaza at 17:22:10. Thereafter, Plaza makes one additional call to remove the erroneous record. At 17:25:16, approximately three minutes after learning that Rutledge's description of the error was correct, both officers concluded the stop.

Officer Tessier communicates the stop is concluded by telling both men to "Have a great night." Rutledge then inquires whether he is free to go and Plaza answers yes. (Videotape at 17:25:18). Either Rutledge or Evans-El is heard requesting Officer Tessier's name and badge number, both of which she immediately provided. Shortly after this exchange, the audio portion of the recording stops. Plaza and Tessier remain on scene, but according to their affidavits they have no further interaction with either Rutledge or his passenger, Evans-El, both of whom voluntarily remain on the scene pending their conversation with the supervisor they had requested. (Plaza Dec., Ex. B, Videotape at 17:05:00 – 17:25:18).

The audio portion of the recorded stop corroborates the officers' version of events entirely, and establishes that Rutledge's statements concerning the duration of the stop do not create a material dispute of fact. On learning that Rutledge claimed his mother had re-claimed

7

the vehicle, it was reasonable for the officers to investigate to determine whether the VCIN report was in fact erroneous and to correct it before concluding the stop. The entire stop lasted approximately 20 minutes. But it was concluded within less than five minutes of learning that the report was erroneous. Importantly, Rutledge does not allege that the officers used the stop as a pretext for some unrelated investigation. See, e.g., Lee v. City of South Charleston, 668 F. Supp. 2d 763, 775-78 (S.D.W.Va. 2009) (discussing an alleged equal protection violation based on a pretextual traffic stop); See also, Whren, 517 U.S. at 813 ("[T]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). He does not allege the officers searched his vehicle or its occupants. Based on the Officers' sworn testimony and corroborating video evidence, it is clear that they had adequate justification for the stop and did not unreasonably prolong its duration. As a result, they did not violate Rutledge's rights under the Fourth Amendment. See, e.q., Branch, 537 F.3d at 338 (holding that the bulk of a thirty-minute stop "was justified by the 'ordinary inquiries incident' to a routine traffic stop") (quoting Illinois v. Cabelles, 543 U.S. 405, 408 (2005)).

Officers Plaza and Tessier have identified evidence in the record which demonstrates the absence of any material dispute of fact, and that the evidence is insufficient to sustain the claims asserted. Because Rutledge has not met his burden to identify materials in the record which demonstrate a genuine dispute of material fact, the Court GRANTS the officers' Motion for Summary Judgment.

Plaintiff is ADVISED that he may appeal from this Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600

Granby Street, Norfolk, Virginia, 23510. The written notice must be received by the Clerk within thirty (30) days from the date of this Order.

The Clerk is DIRECTED to mail a copy of this Order to the pro se Plaintiff and to all counsel of record.

/s/
Douglas E. Miller
United States Magistrate Judge

---

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

October 22, 2014